**NOT FOR PUBLICATION**

_____   :
                                      :
**RAMADA FRANCHISE**                  :
**SYSTEMS, INC.,**                    : UNITED STATES DISTRICT COURT
                                      :    DISTRICT OF NEW JERSEY
           Plaintiff(s),              :
                                      :   Hon. John C. Lifland
       -vs-                           :   Civil Action No. 03-592 (JCL)
                                      :
**SHALOM HOSPITALITY,**               :
**INC., et al.,**                     : **REPORT & RECOMMENDATION**
                                      :
           Defendant(s).              :
_____   :

## INTRODUCTION

This matter comes before the Court on plaintiff Ramada Franchise Systems, Inc.'s ("RFS") motion to enter final judgment by default against defendants Shalom Hospitality, Inc. ("Shalom"), Sebastian Pulikanikal ("Pulikanikal") and Loociamma Sebastian ("Sebastian"). Pursuant to Fed.R.Civ.P. 78, no oral argument was heard. For the following reasons, this Court respectfully recommends that plaintiff's motion be **granted** as set forth herein.

## FACTUAL BACKGROUND

Plaintiff RFS operates a guest lodging facility franchise system. In October, 1999, RFS entered into a license agreement ("License Agreement") with Shalom for the operation of a guest lodging facility located in Columbia, Tennessee. Defendants

Pulikanikal and Sebastian personally guaranteed Shalom's obligations under the License Agreement and agreed to be bound by the terms of the agreement. RFS contends that beginning in 2000, the defendants repeatedly failed to honor their obligations under the License Agreement. Specifically, RFS alleges that Shalom failed to file five consecutive quality assurance inspections and it failed to file monthly franchise reports for the facility. Additionally, despite two letters advising Shalom to cease its use of the Ramada trademarks and demanding that Shalom cease from operating the facility as a Ramada, Shalom continued to do so. After providing notice to the defendants of their default, RFS terminated the License Agreement. The License Agreement included various provisions for payment of damages, interest, costs and attorney's fees in the event of termination. RFS' complaint seeks payment for all outstanding fees, charges, damages and costs.

## PROCEDURAL HISTORY

On January 19, 2005, this Court issued a Report and Recommendation to the Honorable John C. Lifland, U.S.D.J. recommending that RFS' motion to strike the defendants' pleadings and to enter default against them be granted and that the motion for the entry of default judgment be denied without prejudice. By Memorandum and Order dated February 15, 2005, Judge Lifland adopted the Report and Recommendation and entered default against defendants. The application for

default judgment was denied pending a hearing on notice to defendants as required in the rule.

Rule 55(b) provides that if a default judgment is being sought against a party who has appeared in the case, the party must be "served with written notice of the application for judgment at least 3 days prior to the hearing on such application." Since defendants had "appeared" in the case, having defended it for more than a year, the Court scheduled a hearing on the application for default judgment on April 27, 2005 at 10:00 a.m. On April 27, 2005, defendants failed to appear at the hearing. Plaintiff's counsel, Donald Soutar, Esq. appeared and indicated he would submit additional affidavits to support the entry of default judgment. There has been no further communication from defendants.

## DISCUSSION

Fed. R. Civ. P. 55(b) governs the entry of default judgment. Default judgment is generally disfavored because it prevents a resolution of a plaintiff's claims on the merits. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). Thus, judgments by default are not granted as a matter of right, even where the defendant's default has been noted pursuant to Federal Rule 55(a). See E.I. Du Pont de Nemours & Co. v. The New Press, Inc., 1998 WL 159050 at *2 (E.D. Pa. Mar. 16, 1998) (citing Wright, Federal Practice and Procedure § 2685). Rather, a court is "required to exercise sound judicial discretion in deciding whether to . . . enter default judgment." Id.

(citing <u>Harad v. Aetna Cas. and Sur. Co.</u>, 839 F.2d 979, 982 (3d Cir.1988). When a defendant is in default, the Court treats all pleadings and allegations of the plaintiff as true. <u>See</u> <u>Comdyne I, Inc. v. Corbin</u>, 908 F2d. 1142, 1149 (3d Cir. 1990).

Plaintiff has submitted two affidavits of Kathy Cox, Director of Franchise Administration for Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. in support of its motion. Ms. Cox explains that on or about October 13, 1999, RFS entered into a License Agreement with Shalom for the operation of a 155-room guest lodging facility in Columbia, Tennessee. Pursuant to section 5 of the License Agreement, Shalom was obligated to operate a Ramada facility for a fifteen-year term, during which time Shalom was permitted to use the Ramada trademarks in association with the operation and use of the facility as part of RFS' franchise system.

Pursuant to section 3 of the License Agreement, Shalom was required, among other things, to make renovations to the facility, to operate the facility in compliance with RFS' "System Standards," as defined in the License Agreement, including RFS' quality assurance requirements.

Pursuant to section 4.8 of the License Agreement, RFS had the "unlimited right to conduct unannounced quality assurance inspections" of the facility.

Pursuant to sections 7 and 18 and Schedule C of the License Agreement, Shalom was required to make certain periodic payments to RFS for royalties, service

4

assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

Pursuant to section 3.9 of the License Agreement, Shalom was required to prepare and submit monthly reports to RFS disclosing, among other things, the amount of gross room revenue earned by Shalom at the facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RFS.

Pursuant to section 11.2 of the License Agreement, RFS could terminate the License Agreement, with notice to Shalom, for various reasons, including Shalom's (a) failure to pay any amount due RFS under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RFS specifying one or more defaults under the License Agreement, and (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

Pursuant to section 12.1 of the License Agreement, Shalom agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to RFS in accordance with a formula specified in the License Agreement.

Pursuant to section 7.3 of the License Agreement, Shalom agreed to pay

5

interest to RFS at the rate of 1.5% per month or the maximum rate allowed by law, whichever is less, on all amounts due and owing under the License Agreement.

Section 13 of the License Agreement specified Shalom's obligations in the event of a termination of the License Agreement, including its obligation to immediately cease using all of the Ramada trademarks.

Pursuant to section 17.4 of the License Agreement, Shalom agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed.

Mr. Pulikanikal and Ms. Sebastian provided RFS with a full personal guaranty of Shalom's obligations under the License Agreement (the "Guaranty").  Pursuant to the terms of the Guaranty, Mr. Pulikanikal and Ms. Sebastian agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement."

Beginning in 2000, Shalom repeatedly failed to operate the facility in accordance with RFS' System Standards, in breach of its obligations under the License Agreement.

By way of letters dated May 31, 2000, October 27, 2000, April 20, 2001, August 24, 2001, and December 7, 2001, RFS notified Shalom that it was in default

6

of the License Agreement because the facility failed five consecutive quality assurance inspections.

By way of letters dated July 17, 2000, July 27, 2001, and December 7, 2001, RFS notified Shalom that it was in default of the License Agreement because it had failed to file monthly franchise reports for the facility and remit Recurring Fees to RFS, and that failure to cure these defaults could result in the termination of the License Agreement.

By letter dated January 31, 2002, RFS terminated the License Agreement and advised Shalom that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as part of the Ramada System, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Ramada, (b) all items bearing the Ramada trademarks had to be removed, (c) all signs and any listings in directories and similar guides in which the facility was identified as a Ramada had to be changed, (d) it was required to pay to RFS as liquidated damages for premature termination as required under the License Agreement, (e) it had to de-identify the facility within 10 days from the receipt of the notice, and (f) demand was made for all outstanding Recurring Fees and additional monies through the date of deidentification.

Shalom failed to pay any of the outstanding Recurring Fees or liquidated

damages. In addition, despite RFS' repeated demands, Shalom continued to use the Ramada trademarks in connection with its operation of the facility through at least June 4, 2002, as evidenced by the report and copies of photographs attached to the Cox affidavit.

Plaintiff is seeking $14,596.65 in Recurring Fees pursuant to the franchise agreement. Defendants provided an itemized statement of these fees. Based on the details provided in Cox affidavits, plaintiff is entitled to $14,596.65 in Recurring Fees. According to the agreement, plaintiff is also entitled to interest on that amount calculated at the rate of 1.5% per month which totals $8,695.60 from January 31, 2002, the date of termination, through May 23, 2005. See Supplemental Cox Affidavit.

Section 12.1 of the License Agreement provides for the payment of liquidated damages in accordance with a formula in the event of a premature termination of the agreement. The liquidated damages attempt to forecast the lost Recurring Fees that plaintiff would otherwise have received but for the early termination. Ms. Cox explains that the License Agreement provides for a minimum liquidated damage of $2,000 multiplied by the number of rooms. Accordingly, RFS is seeking $310,000 in liquidated damages as a result of the premature termination. Based on the Supplemental Cox affidavit, the Court is satisfied that plaintiff is entitled to this sum, plus interest in the amount of $180,088.77 from March 2, 2002 through May 23,

2005.

Plaintiff also seeks damages under the Lanham Act for defendant's unauthorized use of the Ramada trademarks. Plaintiff's request for damages is based on the average monthly gross revenue of the facility multiplied by four for the four-month period of infringement. Plaintiff also seeks trebling of these damages.

The Lanham Act entitles the owner of a famous mark to recover damages against a party infringing on its trademark if it is shown that the infringer has willfully traded on the owner's reputation or diluted the mark. 15 U.S.C. § 1117. Under § 1117 (a), "subject to the principles of equity," the court shall award plaintiff (1) defendant's profits, (2) damages, and (3) costs. "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." Id.

The Act further provides: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Id.

Here, the Court finds that Shalom continued to use plaintiff's mark for four months after termination of the franchise agreement, which constitutes willful unauthorized use. Therefore, plaintiff could be legally entitled to damages under §1117(a). However, there is no proof in the record of defendants' profits or damages

9

flowing from the unauthorized use of plaintiff's marks.  Plaintiff's attempt to establish Lanham Act damages by relying on Recurring Fees is insufficient.  As the District Court has previously held, Recurring Fees is a contractual matter, not what the Lanham Act contemplated when it provided for "actual damages" or "damages" in § 1117(a).  <u>Ramada Franchise Systems, Inc. v. New S&G, Inc.</u>, Civil Action 04-2446, May 31, 2005 Opinion of the Hon. John C. Lifland, U.S.D.J. at 8.  For this reason, the Court in its equitable discretion declines plaintiff's request to award Lanham Act damages.

Plaintiff also submitted the affidavit of Brian D. Plocker, Esq. in support of it claim for legal fees and expenses.  Mr. Plocker's affidavit details the services rendered and expenses incurred by plaintiff's counsel in prosecuting this claim.  The descriptions and amounts appear reasonable.  Thus, plaintiff is entitled to $31,156.71 for attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that plaintiff's motion for entry of default judgment be **granted** against defendants in the amount of $544,537.73.

Dated: August 31, 2005

                                                **MARK FALK**
                                                **United States Magistrate Judge**

Original:   Clerk of the Court
cc:           Hon. John C. Lifland, U.S.D.J.
              All Parties
              File